# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT ROGERS, | CASE NO. 1:05-cv-00569-AWI-SKO PC |
| Plaintiff, | FINDINGS AND RECOMMENDATIONS RECOMMENDING THAT DEFENDANTS' MOTION TO DISMISS BE GRANTED |
| v. | |
| WARDEN A.K. SCRIBNER, et al., | (Doc. 23) |
| Defendants. | OBJECTIONS DUE WITHIN 30 DAYS |

Plaintiff Robert Rogers ("Plaintiff") is a state prisoner proceeding pro se in this civil rights action pursuant to 42 U.S.C. § 1983. This action is proceeding on Plaintiff's claim that Defendants Walker, Miller, Montgomery, Alvarez, Scribner, Stockman, Ortiz, Bravo, Yamamoto, Vella, and Villareal violated Plaintiff's rights under the Due Process Clause of the Fourteenth Amendment. The events described in Plaintiff's complaint took place while Plaintiff was incarcerated at the California State Prison in Corcoran, California ("CSP-Corcoran").

On January 4, 2010, Defendants Scribner, Walker, Miller, Stockman, Ortiz, Bravo, Yamamoto, Vella, and Villareal filed a motion to dismiss based on Plaintiff's failure to exhaust his administrative remedies prior to filing suit.[1] (Doc. #23.) On January 22, 2010, Plaintiff filed an opposition to Defendants' motion to dismiss. (Doc. #25.) Defendants filed a reply to Plaintiff's opposition on February 4, 2010. (Doc. #30.)

---

[1] Defendant Alvarez later filed a notice joining the motion to dismiss. (Doc. #27.) The remaining Defendant, Montgomery, has not made an appearance in this action. On November 2, 2009, the Court received an unexecuted summons as to Defendant Montgomery that indicated that Montgomery was no longer employed at the address provided by Plaintiff. (Doc. #19.)

1

**I.    Background**

    **A.    Plaintiff's Complaint**

Plaintiff filed the original complaint in this action on April 28, 2005. (Doc. #1.) Plaintiff's complaint alleged that Defendants placed Plaintiff in administrative segregation ("ad-seg") in February 2002 for being suspected of trafficking marijuana in CSP-Corcoran. Plaintiff claimed that he was placed in ad-seg for 835 days. Plaintiff further claimed that he possessed a protected liberty interest in avoiding his ad-seg confinement because the duration of his confinement combined with the restrictive conditions in ad-seg constitute an atypical and significant hardship that warrants due process protection. See Sandin v. Conner, 515 U.S. 472, 484 (1995) (liberty interests created by state law generally limited to freedom from restraint which imposes atypical and significant hardship on an inmate in relation to the ordinary incidents of prison life).

Plaintiff further alleged that he was deprived of his protected liberty interest in avoiding 835 days of ad-seg confinement without the necessary procedural safeguards guaranteed by the Due Process Clause. Plaintiff complained that he was not given sufficient information regarding the evidence used to justify his ad-seg placement and complained about several procedural deficiencies with respect to his disciplinary hearing.

After screening Plaintiff's complaint pursuant to 28 U.S.C. § 1915A, the Court found that Plaintiff stated cognizable due process claims against Defendants Walker, Miller, Montgomery, Alvarez, Scribner, Stockman, Ortiz, Bravo, Yamamoto, Vella, and Villareal. Plaintiff was given the option to amend his complaint, or to proceed only on the due process claims.[2] Plaintiff opted to proceed only on his due process claims.

    **B.    Defendants' Motion to Dismiss**

Defendants argue that they are entitled to dismissal of this action because Plaintiff has failed to exhaust his administrative remedies as required under the Prison Litigation Reform Act ("PLRA"). (Defs.' Notice of Mot. and Mot. to Dismiss [FRCP 12(b)]; Mem. of P. & A. in Supp. Thereof 1:22-

---

[2] The Court found that Plaintiff's Eighth Amendment claims, state law claims, and claims against Defendant Denny failed to state a claim. Plaintiff opted not to amend his complaint to cure the deficiencies in these claims and these claims were dismissed.

2

27.) Defendants contend that the PLRA requires that an inmate exhaust all available administrative remedies prior to filing suit. (Mot. to Dismiss 4:28-5:3.) Defendants argue that in order to effectively exhaust all available administrative remedies, prisoners must file an appeal within fifteen (15) working days of the event or decision being appealed. (Mot. to Dismiss 5:27-6:2.) Defendants also allege that the inmate appeals process within the California Department of Corrections and Rehabilitations consists of several levels of appeals: (1) informal resolution; (2) formal written appeal on a CDC Form 602 ("CDC 602"); (3) second level appeal to the institution head; and (4) third level appeal (or "Director's Level Review"). (Mot. to Dismiss 6:3-6.) Defendants argue that the failure to pursue an administrative grievance through all four levels of appeal constitutes failure to exhaust all available administrative remedies. (Mot. to Dismiss 6:6-8.)

Defendants claim that Plaintiff filed a CDC 602 on June 28, 2004.[3] (Mot. to Dismiss 6:22-25.) Defendants further allege that Plaintiff's appeal was rejected as untimely by an appeals coordinator on July 6, 2004 and at the Director's Level Review on December 27, 2004. (Mot. to Dismiss 6:22-25.) Defendants contend that Plaintiff's only other reference to any administrative appeals is a June 3, 2004 appeal alleged to have been mistakenly forwarded to the parole office. (Mot. to Dismiss 6:25-28.)

Defendants argue that the June 28, 2004 appeal and the alleged June 3, 2004 appeal were untimely and fail to constitute exhaustion of Plaintiff's administrative remedies. Defendants contend that Plaintiff was placed in ad-seg on February 5, 2002 based on a pending Rules Violation Report ("RVR"). (Mot. to Dismiss 7:2-3.) Plaintiff was found guilty of the RVR in September 2002. (Mot. to Dismiss 7:5.) A Classification Staff Representative ("CSR") found evidentiary deficiencies in the RVR decision and the RVR was reissued and reheard. (Mot. to Dismiss 7:5-7.) Plaintiff was found guilty again in March 2003. (Mot. to Dismiss 7:7-8.) A CSR reviewed the second decision and again found due process concerns. (Mot. to Dismiss 7:8-9.) A third RVR was issued in October 2003, but the Institutional Classification Committee ("ICC") elected to release Plaintiff back to the

---

[3] Defendants' recitation of the facts is based on Plaintiff's own allegations regarding his attempts to exhaust his administrative remedies, as set forth in his complaint and the exhibits attached to his complaint. Defendants do not present any other declarations or documents to support these facts.

3

general population. (Mot. to Dismiss 7:9-11.) Plaintiff refused to return to the general population on January 9, 2004. (Mot. to Dismiss 7:9-11.) On January 28, 2004, Plaintiff was informed that he would be transferred to another facility and the next day the ICC informed Plaintiff that the charges against him were dismissed. (Mot. to Dismiss 7:11-14.)

Defendants argue that Plaintiff has failed to comply with the CDCR's appeals process requirements and, has therefore, failed to exhaust his administrative remedies. (Mot. to Dismiss 7:15-17.) The CDCR appeals process requires Plaintiff to submit an appeal within fifteen (15) working days of the event or decision being appealed. (Mot. to Dismiss 7:17-19.) Defendants contend that the issues being appealed are the alleged due process violations related to Plaintiff's RVR and ICC hearings. (Mot. to Dismiss 7:22-23.) Defendants argue that, at the latest, the fifteen (15) day deadline began to accrue on January 9, 2004, the day the ICC elected to release Plaintiff back to general population. (Mot. to Dismiss 7:25-28.) In support of this argument Defendants cite the fact that Plaintiff's June 28, 2004 appeal explicitly states that the relevant events at issue occurred between February 5, 2002 and January 8, 2004. (Mot. to Dismiss 7:28-8:4.) In his appeal, Plaintiff wrote that:

> Appellate contends that each reviewer of the Rules Violation Reports, Ad Seg. Orders, including I.C.C. members are liable for damages suffered between 2/5/02 and 1/8/04, while he was in Ad. Seg. and the Due Process Violations that kept him there for almost two years.

(Mot. to Dismiss 7:28-8:4.) Thus, Defendants conclude that Plaintiff's appeals filed in June 2004 were untimely and Plaintiff failed to exhaust his administrative remedies as required by the PLRA. (Mot. to Dismiss 8:7-10.)

### C. **Plaintiff's Opposition**

Plaintiff claims that he was placed in ad-seg on February 5, 2002 and released from ad-seg on May 20, 2004. (Opp'n to Def.'s Notice of Mot. to Dismiss (FRCP 12 (B); Mem. of P. & A. in Supp. Thereof 1:26-27.) Plaintiff concedes that he was scheduled for release back into the general population on January 9, 2004, but Captain Rodriguez determined that Plaintiff's release presented a threat to Plaintiff and others. (Opp'n 1:27-2:1.) Plaintiff claims that he filed an inmate appeal in a timely manner after he was released from ad-seg, but the appeal was mistakenly routed to the

parole office by the appeals coordinator. (Opp'n 2:2-4.) Plaintiff appealed to the third level but on September 18, 2004, was told to resolve the matter at the institutional level. (Opp'n 2:5-6.) On October 5, 2004, the appeals coordinator asked Plaintiff why he did not file his appeal on time. (Opp'n 2:8-9.) Plaintiff explained that he filed an appeal in a timely manner but the appeals coordinator mistakenly sent the appeal to a San Diego parole office. (Opp'n 2:9-11.) Plaintiff filed an appeal at the third level but did not receive a response within thirty (30) days. (Opp'n 2:12.) Plaintiff was told to contact the appeals coordinator again. (Opp'n 2:13.) On February 2, 2005, correctional officer D. Patterson brought Plaintiff a response written on a "screen out sheet" that noted that Plaintiff's explanation was "duly noted." (Opp'n 2:14-16.) Plaintiff sent another appeal to the third level on February 15, 2005. (Opp'n 2:17-18.) Plaintiff filed the civil complaint in this action on April 26, 2005. (Opp'n 2:19-21.)

Plaintiff's version of the facts is generally consistent with Defendants' version. However, Plaintiff argues that CDCR's time constraints required Plaintiff to file an appeal within fifteen (15) working days of being released from ad-seg. (Opp'n 5:10-11.) Plaintiff contests Defendants' assertion that January 9, 2004 is the relevant date when the fifteen (15) working day deadline began to accrue. (Opp'n 5:13-14.) Plaintiff asserts that he was not released from ad-seg until May 20, 2004, and the fifteen (15) working day deadline began to accrue on that day, making his first attempt to appeal on July 3, 2004 timely. (Opp'n 5:13-14.) Plaintiff further contends that his appeal was lost by prison administrators after he filed his first appeal. (Opp'n 5:11-12.)

### D. **Defendants' Reply**

Defendants argue that the very latest the fifteen (15) working day deadline began to accrue is January 29, 2004, when Plaintiff was informed by the I.C.C. that the charges against him were dismissed. (Defs.' Reply to Pl.'s Opp'n to Mot. and Mot. to Dismiss 3:3-5.) Defendants further argue that the period between January 9, 2004 to May 20, 2004 is not relevant to determining when Plaintiff should have filed his appeal because during that period of time, Plaintiff was held in ad-seg because he refused to return to general population, not as a result of any due process violations associated with any disciplinary hearings or ICC hearings. (Reply 3:3-11.) In support of this argument, Defendants notes that Plaintiff refused to return to the general population on January 9,

2004 when the ICC elected to release Plaintiff, and the fact that Plaintiff's own June 28, 2004 appeal describes the relevant dates as those between February 5, 2002 and January 8, 2004.  (Reply 3:5-9.)

**II.     Discussion**

Defendants contend that they are entitled to dismissal of this action because Plaintiff failed to exhaust his administrative remedies prior to filing suit as required by the PLRA. "No action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The section 1997e(a) exhaustion requirement applies to all prisoner suits relating to prison life. Porter v. Nussle, 435 U.S. 516, 532 (2002).

The PLRA exhaustion requirement requires proper exhaustion. Woodford v. Ngo, 548 U.S. 81, 93 (2006). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules. . . ." Id. at 90-91. The proper exhaustion requirement serves two important purposes: 1) it gives an agency the opportunity to correct its own mistakes before it is brought into federal court and it discourages disregard of the agency's procedures; and 2) it promotes efficiency because claims can be resolved much more quickly and economically in proceedings before an agency than in litigation in federal court. Id. at 89.

Section 1997e(a) does not impose a pleading requirement, but rather, is an affirmative defense which Defendants have the burden of raising and proving the absence of exhaustion. Wyatt v. Terhune, 315 F.3d 1108, 1119 (9th Cir. 2003). The failure to exhaust nonjudicial administrative remedies that are not jurisdictional is subject to an unenumerated Rule 12(b) motion, rather than a summary judgment motion. Id. at 1119 (citing Ritza v. Int'l Longshoremen's & Warehousemen's Union, 837 F.2d 365, 368 (9th Cir. 1998) (per curium)). In deciding a motion to dismiss for failure to exhaust administrative remedies, the court may look beyond the pleadings and decide disputed issues of fact. Id. at 1119-20. If the court concludes that the prisoner has failed to exhaust administrative remedies, the proper remedy is dismissal without prejudice. Id.

Most of the facts related to Plaintiff's attempts to exhaust his administrative remedies are not in dispute. Both parties agree that Plaintiff was not released from ad-seg until May 20, 2004.

Plaintiff did not file an administrative appeal until after he was released from ad-seg, sometime around June 2004. Both parties agree that CDCR imposes a fifteen (15) working day deadline to file an appeal. Both parties also agree that the ICC scheduled Plaintiff to be released from ad-seg January 9, 2004.[4] Further, Plaintiff does not rebut Defendants' contention that the charges against Plaintiff that formed the basis of his initial confinement in ad-seg were dropped on January 29, 2004.

The only issue in dispute is when the fifteen (15) working day deadline to file an appeal began to accrue. Whether Plaintiff's first appeal was filed in a timely manner depends on when the deadline began to accrue. The timeline of events is summarized below:

```
02/05/2002 - Plaintiff placed in ad-seg for RVR
09/2002    - Plaintiff found guilty of RVR, but decision later reversed
03/2003    - RVR reissued and Plaintiff found guilty again, but decision later reversed
10/2003    - RVR reissued
01/09/2004 - Plaintiff scheduled for release into general population, but Plaintiff stays in ad-seg
01/28/2004 - Plaintiff informed he would be transferred to another facility
01/29/2004 - Plaintiff informed that RVR charges dismissed
05/20/2004 - Plaintiff released from ad-seg
06/03/2004 - Plaintiff files appeal mistakenly forwarded to parole office
06/28/2004 - Plaintiff's appeal submitted again
07/06/2004 - Plaintiff's appeal rejected as untimely by appeals coordinator
09/18/2004 - Plaintiff told to resolve matter at the institutional level
10/05/2004 - Appeals Coordinator asks Plaintiff why appeal was not filed on time
10/14/2004 - Plaintiff responds that appeal was timely, but mistakenly forwarded to parole office
12/27/2004 - Plaintiff's appeal rejected as untimely at Director's Level Review
02/02/2005 - Plaintiff receives response from correctional officer noting Plaintiff's explanation
02/15/2005 - Plaintiff sends appeal again to Director's Level Review
04/26/2005 - Plaintiff mails complaint in this action after receiving no response
```

There are several possibilities for accrual dates: (1) the same day as the disciplinary/ICC hearings where Plaintiff was allegedly denied due process due to inadequate access to the evidence used against him; (2) January 9, 2004 – the day Plaintiff was scheduled to be released from ad-seg for the charges related to the underlying RVR accusing Plaintiff of trafficking marijuana; (3) January 29, 2004 – the day when Plaintiff was informed by the ICC that the charges against him were dismissed; or (4) May 20, 2004 – the day Plaintiff was actually released from ad-seg. Plaintiff's first

---

[4] There may be some dispute between Plaintiff and Defendants as to why Plaintiff was not released from ad-seg. Defendants contend that Plaintiff refused to return to the general population. Plaintiff contends that he did not return to the general population because Captain Rodriguez determined that Plaintiff's release would pose a threat to Plaintiff and other inmates. Plaintiff does not confirm or deny Defendants' assertion that Plaintiff voluntarily chose to stay in ad-seg. However, as discussed below, this dispute is not relevant to the Court's analysis.

7

appeal was filed June 2004. Therefore, Plaintiff's appeal was untimely unless the relevant accrual date was May 20, 2004. If Plaintiff's appeal was untimely, Plaintiff did not follow CDCR's procedural rules and did not properly exhaust his administrative remedies, as required by the PLRA.

The Court finds the Plaintiff's appeal was untimely because it accrued, at the latest, on January 29, 2004. CDCR regulations require than an appeal be filed within fifteen (15) working days of the event or decision being appealed. Plaintiff's complaint arises from his allegation that his due process rights were violated. A due process violation consists of (1) the deprivation of a protected liberty interest (2) without due process. See Wolff v. McDonnell, 418 U.S. 539, 556 (1974) (Due Process Clause protects prisoners from being deprived of liberty without due process of law). The alleged protected liberty interest is Plaintiff's interest in not being housed in ad-seg under restrictive living conditions for an extensive period of time. Plaintiff was allegedly denied due process with respect to that interest during the disciplinary and ICC hearings where Plaintiff was allegedly denied access to the evidence used against him at his disciplinary hearings.

Plaintiff was housed in ad-seg in connection with the allegedly deficient RVR and ICC hearings between February 5, 2002 and January 8, 2004. Plaintiff's additional detention in ad-seg between January 9, 2004 and May 20, 2004 is completely unrelated to the due process violations alleged by Plaintiff. Plaintiff was housed in ad-seg during the latter period because of a determination that release would have posed a danger to Plaintiff and others. Defendants alleged that Plaintiff voluntarily chose to stay in ad-seg and Plaintiff does not rebut that contention. Plaintiff's complaint does not challenge the procedures that resulted in Plaintiff's ad-seg detention being extended past January 8, 2004. Plaintiff has failed to demonstrate how his stay in ad-seg between January 9, 2004 and May 20, 2004 is related to the due process violations alleged in his complaint. Plaintiff's own appeal supports the conclusion that the event or decision that Plaintiff was appealing was his detention in ad-seg between February 5, 2002 and January 8, 2004. Thus, there is no support for Plaintiff's contention that the relevant accrual date for the fifteen (15) working day deadline is on May 20, 2004.

At the latest, the fifteen (15) working day deadline began to accrue on January 29, 2004. Plaintiff was informed that the charges related to the RVR at issue in this lawsuit were dropped on

January 29, 2004. Thus, the "event or decision being appealed" occurred, at the very latest, on January 29, 2004.[5] Plaintiff did not appeal until sometime around June 2004, long after the fifteen (15) working day deadline had passed. Plaintiff's appeal was untimely and Plaintiff did not properly exhaust his administrative remedies. Accordingly, Defendants are entitled to dismissal of this action.

The Court need not address Plaintiff's complaints about how prison officials mistakenly forwarded his appeal to a San Diego parole office and delayed responses to Plaintiff's appeals. Those incidents had no bearing on whether Plaintiff followed the proper procedural rules and filed his appeal before the relevant deadline.

### III.   Conclusion and Recommendation

The Court finds that Plaintiff did not properly exhaust his administrative remedies prior to filing suit, as required by the PLRA. Plaintiff filed his first appeal long after the fifteen (15) working day deadline set forth by CDCR regulations had passed.

Accordingly, it is HEREBY RECOMMENDED that Defendants' motion to dismiss, filed on January 4, 2010, be GRANTED.

These Findings and Recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(1). Within thirty (30) days after being served with these Findings and Recommendations, any party may file written objections with the Court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within ten (10) days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District

///

---

[5] Plaintiff's appeal is untimely even assuming an accrual date of January 29, 2004. The Court notes that it is likely that the accrual date occurred before January 29, 2004. Plaintiff was obligated to appeal within fifteen (15) days of learning that he was (1) denied a protected liberty interest by being given an ad-seg sentence so long that it constituted an atypical and significant hardship, and (2) denied adequate due process at his hearings. Plaintiff would have known of any constitutional deficiencies in his hearings on the day the hearings took place. Although it is unclear precisely when Plaintiff discovered that his ad-seg sentence was so long that it constituted a deprivation of a protected liberty interest, he would have known this by January 8, 2004 when his sentence was scheduled to end.

1  Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

3  IT IS SO ORDERED.

4  **Dated:     June 22, 2010**              /s/ Sheila K. Oberto
                                              UNITED STATES MAGISTRATE JUDGE